UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERYL L. WILLARD,

        Plaintiff,

v.                                       Case No.  8:22-cv-2013-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

        Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**     **Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 241–52). The Commissioner denied Plaintiff's claims initially and upon reconsideration (Tr. 120–42, 145–70). Plaintiff then requested an administrative hearing (Tr. 171–72). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32–55). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

disabled and accordingly denied Plaintiff's claims for benefits (Tr. 16–26). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–4). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

The Plaintiff, who was born in 1959, claimed disability beginning March 2, 2020 (Tr. 93, 95). Plaintiff has a high school diploma and completed nursing aide school (Tr. 38). Plaintiff's past relevant work experience included work as a nurse assistant (Tr. 24). Plaintiff alleged disability due anxiety and depression (Tr. 273).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2025, and had not engaged in substantial gainful activity since March 2, 2020, the alleged onset date (Tr. 19). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: asthma, bipolar disorder, and cannabis abuse (*Id.*). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work as defined by 20 CFR 404.1567(c) at all exertional levels but with the following non-exertional limitations:

> [T]he claimant cannot work around heavy levels of humidity and heavy levels of respiratory irritants. The claimant can understand, remember, carry out, and exercise judgment for simple tasks in an environment with few day-to-day changes in terms of work duties, work settings, and

>work processes. The claimant should not work with the general public. The claimant can have frequent interaction with co-workers and supervisors; however, these interactions should be superficial and work-related.

(Tr. 20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and the medical evidence presented. The ALJ determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce some of the symptoms alleged, the Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 21).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 24). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner, dietary aide, and laundry worker (Tr. 25). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological

abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV.   Analysis

Plaintiff argues here that the ALJ erred in the assessment of her RFC by failing to (1) properly evaluate the opinion of David Newby, ARPN; and (2) failing to account for her moderate limitations in concentration, persistence, and pace. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

#### A.   Opinion Evaluation

First, Plaintiff argues that that the ALJ did not properly consider the opinions of David Newby, ARNP. Before March 27, 2017, Social Security Administration ("SSA")

regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c). Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on March 2, 2020. (*see* Tr. 16). As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). *Compare* §§ 404.1527(c), 416.927(c) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Moreover, the Eleventh Circuit recently affirmed that these new regulations eliminate the treating physician rule. *Harner v. Comm'r of Soc. Sec.*, 38 F.4d 892, 897 (11th

Cir. 2022) (noting that the Commissioner "determined that a change was required due to a shift away from physicians having a personal relationship with claimants and toward claimants consulting multiple doctors and care teams").

The new regulations require an ALJ to apply the same factors when considering opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

7

medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[2] 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

ARNP Newby opined that the Plaintiff had sleep disturbance, mood disturbance, blunt affect, manic syndrome, generalized persistent anxiety, and irritability (Tr. 602). He also opined that Plaintiff would be absent from work more than twice a month. (Tr. 603)

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

8

Finally, ARNP Newby also opined the Plaintiff had marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; frequent deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and continual episodes of deterioration or decomposition in work and work-like settings which cause her to withdraw from that situation or to experience exacerbation of signs and symptoms (Tr. 603–04).

> The ALJ said the following regarding ARNP Newby's opinion:
>
> Mr. Newby opined that the claimant would be absent from work more than twice a month, she has marked restriction of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies in concentration, persistence or pace, and continual episodes of deterioration or decompensation. Although Mr. Newby is the claimant's treating nurse practitioner, the undersigned did not find this opinion persuasive. This opinion is not consistent with the claimant's course of treatment as well as Mr. Newby's own treatment notes. The treatment notes document that the claimant's medications have been effective. The few instances when the claimant has reported symptoms, her medications were adjusted, and she quickly improved.
>
> In addition, there is no evidence that the claimant has marked limitation in activities of living or had continual episodes of deterioration. At her consultative examination, the claimant reported that she does not require help, she can clean, cook, and ship, and she enjoys socializing with friends, playing games, reading, and watching television. Finally, Mr. Newby's explanation is a summary of the claimant's reports but his treatment notes do not document ongoing abnormalities.

(Tr. 23–24) (citations omitted). The ALJ's consideration of ARNP Newby's opinions tracks the regulation's requirements in that he addressed both consistency and supportability. As set forth above, the consistency factor refers to the relationship between a medical source's opinion and other evidence within the record. The ALJ's analysis clearly suggests that ARNP Newby's opinions are inconsistent with other evidence in the

record. First, the ALJ explained that ARNP Newby's opinion is inconsistent with the conservative course of treatment prescribed to Plaintiff (Tr. 23). This finding is supported by substantial evidence, as Plaintiff only attended outpatient therapy sessions and was prescribed low doses of medication (Tr. 523–64). At these sessions, she consistently reported feeling psychiatrically well, having a stable mood, and denied depression (Tr. 538, 545). As the ALJ noted, since the alleged onset date, Plaintiff has not experienced any acute symptoms that required inpatient hospitalization or more aggressive care (Tr. 23).

The ALJ also found that ARNP Newby's opinion was inconsistent with the examination notes from Dr. Marc Puchir, D.O., the consultative examiner. Specifically, ARNP Newby found Plaintiff to have marked[3] restrictions of activities of daily living, but Dr. Puchir noted that Plaintiff does not require help at home; contributes to cleaning, cooking, and shopping; showers and bathes daily; and socializes with friends, among other recreational activities (Tr. 573).[4] Accordingly, substantial evidence supports the ALJ's finding that ARNP Newby's opinion is inconsistent with the medical evidence of record.

---

[3] The SSA defines marked limitations as a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. Part 404 Subpart P, Appendix 1, § 12.00F(2)(d).

[4] Plaintiff argues that the ALJ failed to reasonably explain why "completing basic household chores is inconsistent with a finding of disability." (Doc. 16 at 13). But the ALJ did not determine that Plaintiff was not disabled because she performs these activities of daily living. Instead, the ALJ found that ANRP Newby's opinion—that Plaintiff had marked restrictions of activities of daily living—to be inconsistent with the activities of daily living noted by Dr. Puchir.

The supportability factor deals with the extent to which a medical source has articulated support for the source's own opinion. Here, the ALJ found that ARNP Newby's opinion was not supported by his treatment notes. In particular, the ALJ found that when Plaintiff reported symptoms, her medications were adjusted, and she quickly improved (Tr. 24). This finding is supported by substantial evidence, as her improvements were noted by ARNP Newby on various visits. (*See* Tr. 533 (stating that Plaintiff was doing well psychiatrically and the medication "does appear to be helping with mood symptoms"); Tr. 538 (stating that Plaintiff "reported she feels better on her adjusted medication"); Tr. 545 (stating that Plaintiff is doing well psychiatrically, and reports Risperdal is working well for her).

Plaintiff argues that the supportability analysis is flawed, as the ALJ "cherrypicked" evidence to support his conclusion and ignored evidence that supported ARNP Newby's opinion. This argument is without merit. As set forth above, there is ample evidence that supports the conclusions that Plaintiff's medications were effective and her condition improved with medication. Moreover, the ALJ is not required to address every piece of evidence in his decision. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Regardless, Plaintiffs' argument is, in essence, a request that the Court reweigh the evidence, which it cannot do. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

Plaintiff further argues that, after failing to properly evaluate ARNP Newby's opinions, the ALJ further erred by "crafting his RFC determination from the ALJ's lay interpretation of the raw medical data, rather than being sufficiently informed by any

medical opinion." (Doc. 16 at 7). As a result, Plaintiff argues, the ALJ failed to fully develop the record and should have ordered an additional consultative examination (*Id.* at 17–20). The Commissioner responds that no additional examinations were necessary because the record contained sufficient evidence for the ALJ to make an informed decision (Doc. 17 at 12); *see Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (stating that the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision") (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). The Court agrees. First, a claimant's RFC determination is the province of the ALJ, not a doctor. *Cooper v. Astrue*, 373 F. App'x 961, 926 (11th Cir. 2010). Additionally, the ALJ's RFC determination need not reflect the opinion of any particular medical source. *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ.") (citations omitted).

For these reasons, the Court finds that the ALJ's evaluation of ARNP Newby's opinion is supported by substantial evidence, and the decision of the ALJ will not be reversed on this basis.

    **B.**    **Mental Health Limitations**

Next, Plaintiff argues that, in fashioning her RFC, the ALJ failed to account for the step two finding that Plaintiff has moderate limitations in concentration, persistence,

and pace (Doc. 16 at 21). In response, the Commissioner argues that the ALJ's RFC assessment adequately accounts for the moderate limitation in this area (Doc. 17 at 12).

When an ALJ evaluates a claimant's mental impairments at steps two and three, he or she employs the PRT to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). *See Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005). The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Winschel*, 631 F.3d at 1180. In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three. *Id.*

Here, the ALJ found that Plaintiff had a moderate limitation in the area of concentration, persistence, and pace (Tr. 20). The ALJ also found at steps two and three that Plaintiff had severe mental impairments but did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 19). Consequently, the ALJ proceeded through the sequential evaluation process and assessed Plaintiff's RFC. The ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the

'paragraph B' mental function analysis." (Tr. 20). Specifically, the ALJ included the following nonexertional limitations in Plaintiff's RFC: Plaintiff can understand, remember, carry out, and exercise judgment for simple tasks in an environment with few day-to-day changes in terms of work duties, work settings, and work processes; Plaintiff should not work with the general public; and Plaintiff can have frequent interaction with co-workers and supervisors, however, these interactions should be superficial and work-related (*Id.*).

Plaintiff argues that, in order to find that an individual with a moderate limitation in the area of concentration, persistence, and pace can perform simple tasks (as the ALJ found here), the ALJ must rely on medical evidence stating that a claimant can perform such tasks. *See Winschel*, 631 F.3d at 1181 (remanding where hypothetical question to the VE did not account for claimant's moderate limitation in maintaining concentration, persistence, and pace because the hypothetical merely provided that claimant was limited to simple, routine tasks); *Adams v. Comm'r of Soc. Sec.*, No. 6:13-cv-1599-Orl-DAB, 2015 WL 1020559, at *5 (M.D. Fla. Mar. 6, 2015) (finding that ALJ's hypothetical to VE that restricted inquiry to "simple one-to-two step instructions, to a low stress work environment, and to no assembly lines or production quotas" was "erroneous because it was not based on any actual 'medical evidence' demonstrating that [the claimant] retained the ability to perform the tasks despite concentration difficulties"). The Commissioner responds that the ALJ properly considered all relevant evidence in determining Plaintiff's mental RFC, and substantial medical evidence demonstrates that Plaintiff can "understand, remember, carry out, and exercise judgment for simple tasks in an

environment with few day-to-day changes in terms of work duties, work settings, and work processes" despite her moderate limitation in the area of concentrating, persisting, and maintaining pace. The Court agrees.

In *Winschel v. Commissioner of Social Security*, the Eleventh Circuit rejected the argument that an ALJ adequately accounts for a claimant's limitations in concentration, persistence, and pace by limiting the hypothetical to the VE to "simple, routine tasks or unskilled work." 631 F.3d at 1180. The court provided a caveat to this holding, noting that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.*

Later, in *Neefe v. Comm'r of Soc. Sec.*, the Eleventh Circuit explained that the ALJ accounted for the claimant's limitations in concentration, persistence, and pace "by considering and posing to the vocational expert that [the claimant] could perform only simple tasks in a low stress environment with only limited contact with the public." 531 F. App'x 1006, 1007 (11th Cir. 2013). The court explained that, "[s]ince the ALJ determined that the medical evidence demonstrated that [the claimant] could engage in simple tasks, despite moderate limitation in concentration, persistence, and pace, the ALJ sufficiently accounted for such impairments, implicitly, by limiting the hypothetical that was posed to the vocational expert to include only simple tasks or unskilled work." *Id.*

Here, as in *Neefe*, substantial medical evidence supports the ALJ's conclusion that Plaintiff can "understand, remember, carry out, and exercise judgment for simple tasks in

an environment with few day-to-day changes in terms of work duties, work settings, and work processes;" should not work with the general public; and can have frequent, superficial, and work-related interaction with co-workers and supervisors, despite her moderate limitation in the area of concentration, persistence, and pace (Tr. 20). The ALJ expressly noted that he added these limitations to "address claimant's moderate mental health limitations." (Tr. 22). The ALJ then noted that greater limitations are "simply not consistent with the record" because Plaintiff's symptoms have improved with medication and Plaintiff has not experienced any acute symptoms that require inpatient hospitalization or more aggressive care (Tr. 23). The ALJ also stated that Plaintiff's "treatment notes indicate that [she] is stable on her medication, but the undersigned provided for some limitations to avoid exacerbating the claimant's symptoms due to her ongoing mental health treatment." (*Id.*). This is substantial medical evidence in support of the ALJ's RFC determination. *See also Mijenez v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (holding that ALJ's RFC limitation to "understanding simple directions; making judgments and simple decisions pertaining to unskilled work" adequately accounted for moderate limitation in the area of concentrating, persisting, and maintaining pace where medical evidence showed that claimant "received mostly outpatient treatment for her bipolar disorder and affective mood disorders"); *Hernandez v. Saul*, No. 19-25041-CIV, 2020 WL 8083837, at *13–14 (S.D. Fla. Dec. 22, 2020) (holding that substantial medical evidence supported ALJ conclusion that claimant could perform "simple, routine, and repetitive tasks and [have] occasional interactions with co-workers, supervisors, and the public, and occasional work-setting changes" despite his moderate

limitation in the area of concentrating, persisting, and maintaining pace where the claimant's mental health records "consistently showed that Claimant's mental status exam findings were, for the most part, benign" and claimant was stable on medications).

## V. Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

   1. The decision of the Commissioner is affirmed.

   2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on this 19th day of September 2023.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE